IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **PANAGIOTA MARAS**<br>9000 Canvas Parkway<br>Brecksville, OH 44141<br><br>　　　　Plaintiff,<br><br>　　-vs.-<br><br>**MAYFIELD CITY SCHOOL DISTRICT BOARD OF EDUCATION**<br>1101 SOM Center Road<br>Mayfield Heights, OH 44124<br><br>　　and<br><br>**LACY LONG-GOLDBERG**<br>1289 Chase Avenue<br>Lakewood, OH 44107<br><br>　　　　Defendants. | CASE NO.:<br><br>JUDGE:<br><br><br>**COMPLAINT**<br>42 U.S.C. § 1983<br><br>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br><br>INVASION OF PRIVACY<br><br><br>**JURY DEMAND ENDORSED HEREIN** |

For her claims against Defendants Mayfield City School District Board of Education and Lacy Long-Goldberg, Plaintiff Panagiota Maras states as follows:

**INTRODUCTION**

The COVID-19 pandemic brought forth unprecedented changes in nearly all aspects of civil society. One such area of life was public education. As is increasingly the case in the modern United States, opinions as to how best to confront the issues of the time sharply divided people along political lines. Vitriol was rampant.

Unlike many political issues, school board decision-making regarding COVID-19 policy directly impacted minor-aged students across the country. As such, some minors naturally developed and held opinions of a political nature regarding the policies of their respective school

Page **1** of **11**

boards, including students at Mayfield High School. One such student was Plaintiff Panagiota Maras, then a freshman, who openly opposed COVID-19 policy set forth by the Mayfield City School District Board of Education. Maras opposed universal masking requirements and excessive COVID-19 testing for non-symptomatic students.

As further detailed herein, in response to Maras exercising her constitutionally protected speech, she was targeted and ostracized by Mayfield High School staff, and in particular Defendant Ms. Lacy Long-Goldberg. In response to Maras voicing opposition to Board policy, staff including Ms. Long-Goldberg regularly shamed Maras in front of the rest of the students for being unvaccinated, and referred to her as selfish, dangerous, and irresponsible for putting others at risk. As further detailed herein, the regular and ongoing torment was so severe and caused Maras such anguish that she was effectively forced to not attend high school in person and opted instead to complete her high school education remotely.

The law may authorize the Mayfield school board to enact certain policies for public school students, but it does not authorize educators to maliciously target students who voice concerns and opposition to such policies. After all, students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506, 89 S. Ct. 733, 736, 21 L. Ed. 2d 731 (1969). Mayfield, through its staff, illegally suppressed Maras' free speech expression via public shaming and ostracization. Maras's First Amendment rights were violated, and she seeks vindication of those rights herein.

### THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Panagiota Maras ("Maras") incorporates all non-numbered prior allegations as if fully restated herein.

2. At all relevant times, Maras is and was an individual domiciled in Cuyahoga County, Ohio.

3. At all relevant times, the Mayfield City School District (the "District") and the Mayfield City School District Board of Education (the "School Board") were a body politic principally located in Cuyahoga County, Ohio. The School Board is responsible for formulation and implementation of all official governmental law, policies, regulations, and procedures in effect for the District.

4. Upon information and belief, at all relevant times, Defendant Lacy Long-Goldberg ("Long-Goldberg") was and is an individual domiciled in Cuyahoga County, Ohio.

5. The Court has subject matter jurisdiction over the claims and defendants of this case under 28 U.S.C. § 1331, 28 U.S.C. §§ 1343(a)(3) and (4), 28 U.S.C. § 1367, 28 U.S.C. § 2201, and 42 U.S.C. § 1983.

6. There exists an actual and justiciable controversy between Maras and Defendants requiring resolution by this Court.

7. Venue is proper before the United States District Court for the Northern District of Ohio under 28 U.S.C. § 1391 because all parties reside and/or are otherwise found herein, and all acts and omissions giving rise to Maras's claims occurred in the Northern District of Ohio.

8. A case was filed prior in this Court as Case No. 1:21-cv-01711 on September 2, 2021, under similar facts but substantially different claims. The case was filed by Maras, then a minor, by and through her mother, Terpsehore Maras, seeking damages and injunctive relief. The case was dismissed because *inter alia*, Terpsehore Maras was a non-attorney and was not permitted to assert claims on behalf of her daughter.

## FACTS

9. Plaintiff Panagiota Maras ("Maras") incorporates all prior allegations as if fully restated herein.

10. Maras attended school in the Mayfield City School District at all relevant times herein and from 2020-2023.

11. Maras's date of birth is October 22, 2005.

12. Maras was a student at Mayfield High School at all times in 2021.

13. In or about the 2020-2021 school year, the School Board implemented certain policies (collectively referred to as the "Board Policies") in response to COVID-19, including but not limited to:

    a. Every student was required to wear a mouth and nose covering at all times, except when eating or drinking. Upon information and belief, there were no requirements as to the material, size, or efficacy of such covering for any particular purpose.

    b. Any student-athlete who was not vaccinated for COVID-19 was required to be nasal swab tested for COVID-19 before *and* after each athletic event and practice, regardless of whether he or she was symptomatic, had been exposed to anyone who had been or was symptomatic, or had COVID-19 prior. Upon information and belief, there were no requirements as to the type of COVID-19 testing, or such testing's validity, reliability, or utility.

14. Upon information and belief, the School Board implemented the Board Policies to receive federal and local funding from various government COVID-19 funding programs and dissent was opposed and suppressed by Defendants at least in part to continue policies compliant with such funding requirements.

15. Maras disagreed with the Board Policies of the School Board.

16. In the course of regular and often teacher-led discussion regarding the COVID-19 pandemic in the classroom, Maras openly but nondisruptively expressed her disagreement with the Board Policies.

17. Neither Mayfield High School, the District, nor the School Board had any reason to anticipate that Maras's expressions would substantially interfere with the work of the school or impinge upon the rights of other students.

18. In response to Maras's expressions of disagreement, she was directly targeted for harassment and embarrassment by Mayfield High School staff including in particular Long-Goldberg.

19. Mayfield High School staff including Long-Goldberg sought to chill or suppress Maras's opinions regarding the Board Policies through public shaming, harassment, and ostracizing Maras from her peers.

20. Upon information and belief, no student was shamed, harassed, or ostracized for expressing support for the Board Policies, despite some doing so.

21. Mayfield High School staff and Long-Goldberg maliciously targeted and/or ostracized Maras for expressing her opinion in numerous ways including but not limited to:

    a. Forcing Maras to disclose and announcing her vaccination status to the entire class. Upon information and belief, this information was noted and disseminated to other staff members in the District.

    b. Regularly referring to Maras in front of the class as selfish, dangerous, and irresponsible for putting others at risk, for choosing not to be vaccinated against

      COVID-19. Long-Goldberg regularly implied in front of the class that Maras was responsible for killing people.

    c. Separating Maras physically from the rest of the class (i.e. putting her in a corner or in the hall) due to her vaccination status. Upon information and belief, this was not one of the Board Policies and was done unilaterally by Mayfield High School staff including Long-Goldberg.

22. Other unvaccinated students who did not voice their opinions were not treated in this way, as this treatment arose directly from Maras voicing her opinions regarding the Board Policies.

23. The abusive treatment of Mayfield High School staff and Long-Goldberg caused great mental suffering and anguish to Maras. Fellow students at Mayfield High School, encouraged by the conduct of Long-Goldberg and other staff, joined in harassing Maras regarding her vaccination status and opinions on the Board Policies.

24. Due to the abusive and arbitrary requirement to undergo painful nasal swab testing 10 to 14 times per week for COVID-19, Maras ended her career as a student-athlete.

25. Maras informed a Mayfield High School counselor of the abusive treatment and its severe effect on her mental health, but upon information and belief, no action was taken to resolve or mitigate the adversarial treatment of Maras by Mayfield High School staff including Long-Goldberg.

26. Maras's mother contacted members of the School Board directly and informed them regarding the harassment and targeting of Maras in the school, but upon information and belief, no action was taken to resolve or mitigate the adversarial treatment of Maras by Mayfield High School staff including Long-Goldberg or other students.

27. Maras's mental health declined severely and the torment from Mayfield High School staff, including Long-Goldberg, became too much to bear. With the approval of the same Mayfield High School counselor, Maras requested and was granted permission to finish the remainder of her high school career remotely.

28. The isolation that came from attending school separated from her peers caused Maras further mental anguish; however, it was an improvement upon Maras's condition while attending in-person.

### CLAIM I – 42 U.S.C. § 1983
Violation of the First and Fourteenth Amendments
As to all Defendants

29. Maras incorporates all prior allegations as if fully restated herein.

30. At all relevant times, the School Board and Long-Goldberg acted under color of state law and/or within the scope of their employment.

31. Maras engaged in constitutionally protected speech when, during class discussion and in other school settings, she expressed disagreement with the School Board's COVID-19 policies, including its mask mandate, vaccination requirements, and testing protocols. Maras's speech addressed matters of public concern and was neither disruptive nor disrespectful.

32. Maras's expression was protected under the First Amendment as applied to the states through the Fourteenth Amendment. Her speech did not materially interfere with school operations or the rights of other students.

33. In retaliation for Maras's protected expression, Long-Goldberg and other Mayfield High School staff publicly ridiculed and humiliated Maras, compelled her to disclose her vaccination status to classmates, labeled her "selfish," "dangerous," and "irresponsible,"

insinuated that she was "killing people," and physically separated her from other students during class.

34. The conduct of Long-Goldberg and other Mayfield High School staff was motivated by malicious hostility and bad faith toward Maras's viewpoint and was intended to punish, chill, and deter her from expressing disagreement with the School Board's policies. At the very least, the behavior was reckless.

35. The School Board, acting through administrators with policymaking authority, ratified or acquiesced in the unconstitutional conduct by allowing its widespread occurrence, failing to take corrective action after being notified of the harassment, and by maintaining customs, practices, or policies that permitted staff to retaliate against students for expressing dissenting opinions on COVID-19 policies.

36. Defendants' conduct constituted viewpoint discrimination and retaliation in violation of Maras's rights to freedom of expression guaranteed by the First and Fourteenth Amendments to the United States Constitution and enforceable under 42 U.S.C. § 1983.

37. As a direct and proximate result of Defendants' unconstitutional actions, Maras suffered severe emotional distress, humiliation, loss of educational opportunities, and other compensable injuries.

## CLAIM II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
As to Long-Goldberg

38. Maras incorporates all prior allegations as if fully restated herein.

39. Long-Goldberg intentionally engaged in conduct directed toward Maras that was extreme, outrageous, and designed to cause severe emotional distress, including but not limited to:

   a. forcing Maras to disclose her vaccination status to the entire class;

    b. repeatedly labeling Maras as "selfish," "dangerous," and "responsible for killing people" because she was unvaccinated;

    c. publicly ridiculing and shaming Maras in front of classmates for expressing disagreement with the Board Policies; and

    d. physically separating Maras from other students and isolating her in the classroom without legitimate justification.

40. Long-Goldberg intended to cause Maras emotional distress or knew or should have known that her conduct would result in serious emotional distress to Maras.

41. The conduct of Long-Goldberg was outrageous, extreme, and beyond all possible bounds of decency, and can be regarded as utterly intolerable in a civilized community.

42. Maras's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. As a direct consequence of the conduct, Maras suffered mental anguish so severe that she withdrew from in-person schooling and completed her education remotely.

43. The actions of Long-Goldberg were willful, malicious, and in bad faith, or conducted in a wanton or reckless manner.

44. As a direct and proximate result of Long-Goldberg's conduct, Maras suffered severe emotional distress, humiliation, loss of educational opportunities, and other compensable injuries.

### CLAIM III – INVASION OF PRIVACY
As to Long-Goldberg

45. Maras incorporates all prior allegations as if fully restated herein.

46. Long-Goldberg, acting intentionally and without authorization, publicly disclosed private medical information concerning Maras by compelling her to reveal her COVID-19

vaccination status to classmates during instructional time and by announcing or otherwise confirming that status to other students.

47. The information disclosed by Long-Goldberg concerned Maras's private medical condition and was not previously made public by Maras or her family. The disclosure was not reasonably necessary to any legitimate educational or public-health purpose, and it was made in a manner designed to embarrass and humiliate Maras.

48. Long-Goldberg's conduct constituted a public disclosure of private facts.

49. The disclosure of Maras's vaccination status would be highly offensive to a reasonable person of ordinary sensibilities, particularly when made in front of peers and accompanied by ridicule and shaming language that labeled Maras "selfish," "dangerous," and "responsible for killing people."

50. The facts disclosed were not of legitimate public concern. The disclosure served no valid educational or health function and was done maliciously, in bad faith, and with reckless disregard for Maras's privacy and well-being.

51. As a direct and proximate result of Long-Goldberg's wrongful disclosure, Maras suffered severe emotional distress, humiliation, loss of educational opportunities, and other compensable injuries.

**WHEREFORE**, Plaintiff Panagiota Maras respectfully requests that this Court enter judgment in her favor and against Defendants Mayfield City School District Board of Education and Lacy Long-Goldberg, and award the following relief:

A. A declaration that Defendants' acts and omissions, as alleged herein, violated Maras's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and her rights under the laws of the State of Ohio;

B. Compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial, for the emotional distress, humiliation, mental anguish, and other injuries suffered by Maras as a direct and proximate result of Defendants' conduct;

C. Punitive damages against Defendant Lacy Long-Goldberg in her individual capacity, and against any other defendant found to have acted maliciously, in bad faith, or with wanton disregard for Maras's rights;

D. An award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

E. Prejudgment and postjudgment interest as allowed by law; and

F. Such other and further relief as this Court deems just and proper to fully compensate Maras and to vindicate her constitutional and legal rights.

Respectfully submitted,

*/s/ John T. Pfleiderer*
John T. Pfleiderer (0100195)
THE PFLEIDERER FIRM LLC
190 N. Union Street, Suite 201
Akron, OH 44304
Telephone:     (330) 888-1239
Fax:                  (330) 538-8500
Email: jp@pfl-firm.com
*Attorney for Plaintiff Panagiota Maras*

### JURY DEMAND

Plaintiff Panagiota Maras demands trial by jury on all issues so triable.

*/s/ John T. Pfleiderer*
John T. Pfleiderer
*Attorney for Plaintiff Panagiota Maras*